STATE OF NEBRASKA, APPELLEE, V.
JOSEPH TAYLOR, APPELLANT.

634 N.W. 2d 744

Filed September 28, 2001.　No. S-00-1139.

James R. Mowbray and Kelly S. Breen, of the Nebraska Commission on Public Advocacy, for appellant.

Don Stenberg, Attorney General, and Susan J. Gustafson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## I. INTRODUCTION

On July 27, 2000, Joseph Taylor, an inmate at the Department of Correctional Services (DCS), was found guilty by a jury of third degree assault pursuant to Neb. Rev. Stat. § 28-931 (Reissue 1995) (assault upon "a peace officer or employee of the Department of Correctional Services"). On October 5, at a separate enhancement hearing pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 1995), Taylor was found by the court to be a habitual criminal. Taylor was sentenced to not more than nor less than 10 years in prison.

## II. FACTUAL BACKGROUND

On December 23, 1998, Taylor was charged pursuant to Neb. Rev. Stat. § 28-930 (Reissue 1995) with one count of second degree assault upon Joseph Manley, an employee of DCS. Taylor was also charged with being a habitual criminal. On July

15, 1999, after initially pleading guilty, Taylor submitted a motion requesting leave from the court to withdraw his guilty plea and a motion to quash both counts of the indictment. The court granted both motions. At the hearing on the motion to quash, Taylor's counsel contended that charging Taylor as a habitual criminal constituted improper double enhancement of the assault charge. The court overruled the motion to quash.

At trial, Manley testified that on February 18, 1998, the date of the incident, he was employed at the Lincoln Correctional Center as a unit caseworker in the "Protective Custody Unit" or "A Unit." Manley explained that the A Unit is divided into two sections or sides, A-1 and A-2, with each unit housing approximately 60 prisoners. On February 18, Manley was assigned to section A-2 of the A Unit. His responsibilities included supervising the inmates during exercise time, getting the inmates in and out of their cells, and lining the inmates up to be escorted to the cafeteria. On the day of the incident, he was working a 6 a.m. to 2 p.m. shift.

At 8:20 a.m., Manley was sitting in the section A-2 office, working at his desk. Taylor came to the doorway and asked about some paperwork Taylor needed which was being prepared by Manley's supervisor. Taylor was holding a plastic tumbler of hot coffee in his hand. Manley told Taylor he knew nothing about the paperwork. Taylor became upset and told Manley that "he didn't like [his] attitude." Manley stood up and asked Taylor to leave. Taylor instead came inside the office and called Manley a "chicken shit."

Manley removed the radio microphone from his belt and called for assistance. As Manley was looking down to replace the microphone on his belt clip, Taylor threw his coffee in Manley's face. Taylor then began striking Manley with his fists and kicking him until another inmate pulled Taylor away from Manley. A response team responded to Manley's call for assistance and arrived shortly after Taylor had been pulled from Manley. Manley suffered first and second degree burns over the left side of his face and neck, and additional minor injuries to his head. He was treated at a Lincoln hospital.

Taylor testified in his own defense. In substance, Taylor testified that the coffee was accidentally spilled after Manley placed his hands on Taylor to remove him from the office.

At the conclusion of the evidence, the trial court instructed the jury, inter alia, on the elements of second degree and third degree assault of an officer pursuant to §§ 28-930 and 28-931. Taylor requested an additional instruction on general third degree assault pursuant to Neb. Rev. Stat. § 28-310 (Reissue 1995). Section 28-310 states:

(1) A person commits the offense of assault in the third degree if he:

(a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or

(b) Threatens another in a menacing manner.

(2) Assault in the third degree shall be a Class I misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it shall be a Class II misdemeanor.

A Class I misdemeanor is punishable by up to 1 year's imprisonment, a $1,000 fine, or both. Neb. Rev. Stat. § 28-106 (Reissue 1995). The court denied Taylor's request for an instruction on general third degree assault.

The jury found Taylor guilty of third degree assault pursuant to § 28-931, which at the time of Taylor's offense stated:

(1) A person commits the offense of assault on an officer in the third degree if he or she intentionally, knowingly, or recklessly causes bodily injury to a peace officer or employee of the Department of Correctional Services while such officer or employee is engaged in the performance of his or her official duties.

(2) Assault on an officer in the third degree shall be a Class IV felony.

A Class IV felony is punishable by up to 5 years' imprisonment, a $10,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1995).

A separate habitual criminal enhancement hearing was held pursuant to § 29-2221(1), which states in relevant part:

Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal

and shall be punished by imprisonment in a Department of Correctional Services adult correctional facility for a mandatory minimum term of ten years and a maximum term of not more than sixty years . . . .

At the enhancement hearing, the State offered undisputed evidence showing that Taylor had three previous convictions which satisfied the criteria set out in § 29-2221. The court found that Taylor was a habitual criminal and sentenced Taylor to not more than nor less than 10 years' imprisonment pursuant to § 29-2221. Taylor appeals.

## III. ASSIGNMENTS OF ERROR

Taylor asserts, rephrased and renumbered, that the trial court erred in (1) failing to instruct the jury on third degree assault pursuant to § 28-310 and (2) failing to quash the indictment against Taylor as violating due process, equal protection, and this court's holding in *State v. Hittle*, 257 Neb. 344, 598 N.W.2d 20 (1999). For the sake of completeness, we note that although Taylor mentions due process in his assignments of error, he fails to present any argument regarding due process in his brief. Accordingly, we will not address this issue. Generally, errors that are assigned but not argued will not be addressed by an appellate court. *State v. Dunster, ante* p. 329, 631 N.W.2d 879 (2001).

## IV. STANDARD OF REVIEW

■ Whether jury instructions given by a trial court are correct is a question of law. *State v. Johnson*, 261 Neb. 1001, 627 N.W.2d 753 (2001).

■ Regarding questions of law presented by a motion to quash, an appellate court is obligated to reach a conclusion independent of the determinations reached by the trial court. See *State v. Hill*, 255 Neb. 173, 583 N.W.2d 20 (1998).

## V. ANALYSIS

### 1. JURY INSTRUCTIONS

■ Taylor contends the trial court committed prejudicial error in failing to instruct upon general third degree assault, pursuant to § 28-310, as a lesser-included offense of third degree assault under § 28-931. A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an

instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Johnson, supra.* Where the prosecution has offered uncontroverted evidence on an element necessary for a conviction of the greater offense but not necessary for the lesser offense, a duty rests on the defendant to offer at least some evidence to dispute this issue if he or she wishes to have the benefit of a lesser-offense instruction. *Id.*

In *State v. Cebuhar*, 252 Neb. 796, 567 N.W.2d 129 (1997), the defendant asserted that the trial court should have instructed the jury on third degree assault under § 28-310 as a lesser-included offense of third degree assault under § 28-931. In *Cebuhar*, 252 Neb. at 805, 567 N.W.2d at 135, we stated:

> Assuming that third degree assault may, under certain circumstances, be a lesser-included offense of third degree assault on a peace officer, we have held that it is not prejudicial error to not instruct upon a lesser-included offense when the evidence entirely fails to show an offense of a lesser degree than that charged in the information.

We then went on to conclude in *Cebuhar* that because there was no dispute in the evidence at trial that the victim was a peace officer engaged in his official duties at the time of the assault, the district court correctly refused to instruct the jury on assault under § 28-310.

The undisputed evidence at trial in this case establishes that Manley was an employee of DCS and that Manley was working as a DCS caseworker at the time of the assault. Nonetheless, Taylor argues that there was a question of fact as to whether Manley was engaged in his official duties when the incident occurred. Taylor asserts that during the incident, Manley attempted to remove Taylor by placing his hands upon Taylor. Taylor then argues that because Manley was not "trained nor authorized by his employer to lay his hands upon inmates to control or compel inmate compliance," brief for appellant at 13, Manley was not engaged in his official duties. Assuming for the purpose of argument that Manley did place his hands on Taylor, such a fact would raise only an issue as to the effectiveness of

Manley's response when Taylor did not leave the office. It does not constitute proof that Manley was engaged in something other than his official duties as a caseworker at the time of the incident. The evidence conclusively shows that Manley was performing his official duties when the incident occurred.

The district court correctly refused to instruct the jury on general third degree assault. This assignment of error is without merit.

## 2. MOTION TO QUASH

### (a) Equal Protection

Taylor also asserts that his motion to quash should have been granted because his right to equal protection under the Nebraska and U.S. Constitutions was violated by the application of both §§ 28-931 and 29-2221 to his crime.

The record does not reflect that the issue of equal protection was ever raised by Taylor before the district court. In his motion to quash, Taylor cites to "U.S. Const. amend. V" and "Neb. Const. Art. I, sec. 12 and sec. 15," neither of which pertains to equal protection. Furthermore, there is no discussion of the Equal Protection Clause of either the Nebraska Constitution or the U.S. Constitution in the motion to quash. Finally, because no record was made of the hearing on the motion to quash, there is no indication as to what arguments were presented to the district court. It is incumbent upon the appellant to present a record which supports the errors assigned. *State v. Abbink,* 260 Neb. 211, 616 N.W.2d 8 (2000).

In the absence of plain error, where an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *State v. Cisneros,* 248 Neb. 372, 535 N.W.2d 703 (1995). See, also, *In re Interest of Kassara M.,* 258 Neb. 90, 601 N.W.2d 917 (1999). Accordingly, finding no plain error, we decline to address Taylor's equal protection argument.

### (b) *State v. Hittle*

Taylor also asserts that he should not have been found guilty under § 28-931 and sentenced as a habitual criminal under

§ 29-2221 because this results in improper double enhancement, which this court specifically disapproved of in *State v. Hittle,* 257 Neb. 344, 598 N.W.2d 20 (1999). See, also, *State v. Chapman,* 205 Neb. 368, 287 N.W.2d 697 (1980). Both *Chapman* and *Hittle* involved repeat offenses under Nebraska's driving under the influence of alcoholic liquor statutes, and in both cases, the holdings were based on state statutory interpretation rather than "constitutional grounds." *Chapman,* 205 Neb. at 370, 287 N.W.2d at 699. Accord *State v. Hittle, supra.*

In *Hittle,* the defendant had been previously convicted of driving under the influence on at least two occasions under Neb. Rev. Stat. § 60-6,196(2)(c) (Reissue 1993). As a result, his driver's license was suspended. Afterward, the defendant was twice convicted of driving on a suspended license under § 60-6,196(6), which stated in part, " 'Any person operating a motor vehicle on the highways or streets of this state while his or her operator's license has been revoked pursuant to subdivision (2)(c) of this section shall be guilty of a Class IV felony.' " *Hittle,* 257 Neb. at 355, 598 N.W.2d at 29.

At the operative time in Hittle's case, driving on a suspended license was a misdemeanor offense unless § 60-6,196(6) applied, in which case the crime was a felony. Because of the enhancement provisions of § 60-6,196, both of Hittle's offenses for driving on a suspended license were felony crimes.

After the second conviction for driving on a suspended license under § 60-6,196(6), Hittle was sentenced under the habitual criminal statute. The trial court found that Hittle qualified as a habitual criminal based on his two enhanced convictions under § 60-6,196(6). On appeal, Hittle argued that it was improper to sentence him under the habitual criminal statute found at § 29-2221 because § 60-6,196(6) contained its own specific penalty enhancement mechanism.

■ This court agreed, concluding that it was improper to sentence Hittle under the habitual criminal statute. The court reasoned that "[a] defendant should not be subjected to double penalty enhancement through application of both a specific subsequent offense statute and a habitual criminal statute." *Hittle,* 257 Neb. at 355, 598 N.W.2d at 29. See, also, *State v. Burdette,* 259 Neb. 679, 611 N.W.2d 615 (2000); *State v.*

*Lobato*, 259 Neb. 579, 582, 611 N.W.2d 101, 104 (2000) (" ' "special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes so far as there is a conflict" ' ").

Taylor bases his double enhancement argument on the assumption that § 28-931 is an enhanced penalty statute, similar to the driving under the influence statutes at issue in *State v. Hittle, supra.* Taylor points out that general third degree assault under § 28-310 is a misdemeanor offense, while third degree assault under § 28-931 is a felony offense. Taylor also asserts that the only difference between §§ 28-310 and 28-931 is the status of the victim. Therefore, Taylor reasons, § 28-931 constitutes an enhanced penalty for third degree assault based on the status or employment of the alleged victim.

Taylor's argument presents a question of statutory interpretation as to whether the Legislature enacted § 28-931 as a "specific subsequent offense statute" for general third degree assault, or as a separate crime. See *State v. Hittle*, 257 Neb. 344, 355, 598 N.W.2d 20, 29 (1999). In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *State v. Hochstein and Anderson, ante* p. 311, 632 N.W.2d 273 (2001). Penal statutes are given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. *Id.* Also, penal statutes are to be strictly construed. See *id.*

Nothing contained in the plain language of § 28-931 enhances the penalties for third degree assault upon a DCS employee based on subsequent offenses. A comparison of the plain language of §§ 28-310 and 28-931 indicates that the Legislature enacted these statutes to punish two separate and distinct crimes with separate and distinct elements. Under § 28-931, the status of the victim is an element of the crime and is not a subsequent offense penalty enhancement.

The reasoning of *Hittle* is inapplicable to the facts of this case because § 28-931 is not a specific subsequent offense statute. See *State v. Hittle, supra.* This assignment of error is without merit.

## VI. CONCLUSION

Based on the foregoing, we conclude that Taylor's assignments of error are without merit. The conviction and sentence imposed by the district court are affirmed.

AFFIRMED.