STATE OF NEBRASKA, APPELLEE, V.
WYMAN R. MATHER, APPELLANT.
646 N.W.2d 605

Filed June 28, 2002.   No. S-01-738.

Julie E. Bear, Deputy Cass County Public Defender, of Reinsch & Slattery, P.C., for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

On April 5, 2001, Wyman R. Mather was convicted by a jury in the district court for Cass County of 18 counts of visual depiction of sexually explicit conduct which has a child as one of its participants in violation of Neb. Rev. Stat. § 28-1463.03 (Reissue 1995) of the Child Pornography Prevention Act. Mather was sentenced on each of the 18 counts to imprisonment for a term of 3 to 5 years, and the district court ordered that the sentences run concurrently. Mather appeals his convictions and sentences.

On appeal, Mather claims that, if guilty, his conduct amounted to one continuing offense rather than 18 separate counts, that certain evidence was erroneously admitted, and that his sentences are excessive. We conclude that based on the statutory language, and because each of the 18 differing photographs represented a separate violation under either § 28-1463.03(1) or (3), Mather's convictions on 18 counts were not error; that the district court did not err in its evidentiary ruling; and that the sentences are not excessive. Accordingly, we affirm.

## STATEMENT OF FACTS

Mather is a photographer who had a studio in his home in Weeping Water, Nebraska. In September or October 1999, T.P. made an appointment to get her high school senior photographs taken by Mather. At the time, T.P., who was born May 25, 1982, was 17 years old. T.P. arrived at the studio in the afternoon, and shortly after her arrival she and Mather left the studio to take photographs outdoors. Photographs were taken at various locations within Weeping Water, including at a ballpark, near a church, and by a lake.

At some point, Mather told T.P. that he had taken nude photographs of women for their husbands and that he thought nude photography was beautiful. Mather asked T.P. whether she wanted to take some nude photographs, and T.P. said, "Okay." While they were near the lake, Mather took two photographs of T.P. in which she had unzipped her jeans. Mather then drove T.P. to an area approximately 5 miles west of Weeping Water,

described by T.P. as "a place out in the country with a barn and little creek." T.P. testified the location was within Cass County. At this location, Mather took 16 additional photographs of T.P. in which she was completely or near completely nude and in which her breasts and/or her genitals were displayed. Throughout the session, Mather told T.P. she was beautiful and directed her on how to pose, including placing his hands on her breasts and her genital area in order to demonstrate how she should place her hands for the photographs. Each of the 18 photographs depicts a different pose.

Mather and T.P. then returned to Mather's studio where he took senior photographs of T.P. wearing her prom dress. When he had completed taking the senior photographs, Mather told T.P. they would be ready in 2 to 3 weeks. T.P. returned to Mather's studio when the photographs were ready and picked up the senior photographs. Mather showed T.P. the nude photographs; however, he told her she could not have the nude photographs until she turned 18.

T.P. returned to the studio in June 2000, after she had turned 18, and attempted to get the nude photographs, but Mather claimed he would need time to locate the photographs. Officers in the Cass County sheriff's office subsequently obtained a search warrant for Mather's house and studio where they found, inter alia, the 18 photographs that are the subject of the charges in this case.

On July 25, 2000, the State filed an 18-count information in the district court charging that Mather did

> knowingly make, publish, direct, create, provide, or in any other manner generate visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers or did knowingly employ, force, authorize, induce, or otherwise cause a child to engage in any visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers.

The language in the information tracked § 28-1463.03(1) and (3). Each count specified 1 of the 18 photographs.

Following a trial held April 3 through 5, 2001, a jury found Mather guilty of all 18 counts. On June 5, the district court sentenced Mather to imprisonment for 3 to 5 years on each of the

18 counts and ordered that the sentences be served concurrently. Mather appeals his convictions and sentences.

## ASSIGNMENTS OF ERROR

Mather asserts the district court erred in (1) determining that the State properly charged him with 18 separate counts rather than 1 count when the alleged facts involved one continuous act resulting in multiple photographs featuring the same subject and taken at the same time and location, (2) admitting the photographs into evidence without proper foundation as to the chain of custody and the location where the photographs were taken, and (3) imposing excessive sentences.

## STANDARDS OF REVIEW

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Rhea*, 262 Neb. 886, 636 N.W.2d 364 (2001).

■ In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in determining admissibility. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *State v. Roeder*, 262 Neb. 951, 636 N.W.2d 870 (2001).

■ Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Heitman*, 262 Neb. 185, 629 N.W.2d 542 (2001).

## ANALYSIS

*Multiple Counts.*

Mather was charged under § 28-1463.03(1) and (3). Subsection (1) provides, "It shall be unlawful for a person to knowingly make, publish, direct, create, provide, or in any manner generate any visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers." Subsection

(3) provides, "It shall be unlawful for a person to knowingly employ, force, authorize, induce, or otherwise cause a child to engage in any visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers." For purposes of the Child Pornography Prevention Act, a "visual depiction" is defined as a "live performance or photographic representation." Neb. Rev. Stat. § 28-1463.02(6) (Reissue 1995).

Mather asserts generally that the conduct complained of, if established by the evidence, amounted to one count. He specifically argues that the conduct complained of was a continuing offense and that the district court erred in determining that the State properly charged him with 18 separate counts of visual depiction of sexually explicit conduct which has a child as one of its participants under § 28-1463.03(1) and (3). Mather argues that the facts of this case support only one count because, although the State based its charges on 18 separate and different photographs, all 18 photographs were taken of the same subject on the same day as part of one ongoing or continuous act. Mather also argues that being charged with and sentenced on 18 separate counts violated the Double Jeopardy Clauses of the U.S. and Nebraska Constitutions which preclude multiple punishments for the same offense imposed in a single proceeding. See *State v. Spurgin*, 261 Neb. 427, 623 N.W.2d 644 (2001).

The Double Jeopardy Clauses of both the federal Constitution and the Nebraska Constitution protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Id.*; *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001). Although in his brief Mather couches his argument in terms of multiple "counts," we understand his claim to be based on the prohibition against multiple punishments for one offense.

The issue raised by Mather with respect to whether or not he has received multiple punishments for the same offense is resolved by reference to the statutory language of § 28-1463.03(1) and (3). It is well settled that whether a particular course of conduct involves one or more distinct offenses under a statute depends on how a legislature has

defined the allowable unit of prosecution. See, *Sanabria v. United States*, 437 U.S. 54, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978); *Bell v. United States*, 349 U.S. 81, 75 S. Ct. 620, 99 L. Ed. 2d 905 (1955). Thus, whether Mather's conduct in creating the 18 different photographs involved 1 offense or 18 separate offenses depends on how the statute defines the offense and the " 'unit of prosecution' " intended by the Legislature as reflected in the plain language of the statute. See *State v. Taylor*, 262 Neb. 639, 634 N.W.2d 744 (2001) (in reading statute, court must determine and give effect to purpose and intent of Legislature as ascertained from entire language of statute considered in its plain, ordinary, and popular sense).

With respect to the prohibited conduct, a person commits an offense under § 28-1463.03(1) by making, publishing, directing, creating, providing, or generating "any visual depiction" of the subject matter described, which depiction under § 28-1463.02(6) may be a "photographic representation." A person commits an offense under § 28-1463.03(3) by employing, forcing, authorizing, inducing, or causing a child to engage in the creation of any such "visual depiction."

Distilled, the focus of subsection (1) is on generating "any visual depiction," and the focus of subsection (3) is on causing a child to engage in the creation of "any visual depiction." The plain language of the statute focuses on "*any* visual depiction." Under § 28-1463.02(6) a "photographic representation" is such a depiction. The singular form of "photographic representation" covered under the statute read in conjunction with the term "any" indicates that the Legislature intended prosecution for each differing photographic representation. The statute is not ambiguous with respect to the prosecution of a photograph as a "photographic representation." Under either § 28-1463.03(1) or (3), an offense is committed as to each differing visual depiction of the type described in the statute. A person who generates differing and multiple prohibited visual depictions or causes a child to engage in the creation of such visual depictions commits multiple offenses of § 28-1463.03(1) or (3), even though each such differing visual depiction involves the same subject captured in a narrow timeframe. Our reading of § 28-1463.03(1) and (3) is in accord with other jurisdictions with similar statutory language.

See, *U.S. v. Esch*, 832 F.2d 531, 541 (10th Cir. 1987) (under federal statute prohibiting use of minor for purpose of producing " '*any visual depiction*' " of sexually explicit conduct, correct unit of prosecution held to be per photograph; each photograph represented separate and distinct use of child); *Burk v. State*, 705 So. 2d 1003 (Fla. App. 1998) (legislative intent was to make production of each individual photograph separate crime; direction of poses and taking of each photograph sufficient to support separate violations for each photograph); *Vineyard v. State*, 958 S.W.2d 834, 837 (Tex. Crim. App. 1998) (use of singular tense in statute meant unit of prosecution for possession was per " 'film image' "); *State v. Morrison*, 31 P.3d 547, 556 (Utah 2001) (each individual " 'visual representation' " of child pornography possessed constitutes basis for separate offense); *State v. Multaler*, 252 Wis. 2d 54, 81, 643 N.W.2d 437, 450 (2002) (where statute referred to possession of " 'any . . . photograph,' " unit of prosecution was each of 28 images found on two computer disks). Compare *State v. Root*, 141 Wash. 2d 701, 710, 9 P.3d 214, 218 (2000) (where focus of Washington statute was on causing minor to engage in sexually explicit conduct rather than on resultant depictions, unit of prosecution for sexual exploitation of minor was "per photo session" per minor involved in each session).

We are mindful that the dissent concludes that the use of the word "any" in § 28-1463.03 makes the statute ambiguous. In reaching this conclusion, the dissent relies, in part, on two cases involving federal statutes, *United States v. Kinsley*, 518 F.2d 665 (8th Cir. 1975), and *U.S. v. Coiro*, 922 F.2d 1008 (2d Cir. 1991). The former involved "any" in the context of a federal statute dealing with the crime of felon in possession of a firearm and the latter involved "any" in the context of a federal statute dealing with obstruction of communication regarding crime. The dissent also relies on *U.S. v. Kimbrough*, 69 F.3d 723, 729-30 n.6 (5th Cir. 1995), which involved a federal possession statute with an explicit quantitative provision making it a single crime to " 'possess 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction' " of child pornography; *State v. Parella*, 736 So. 2d 94 (Fla. App. 1999), which involved the crime of the possession of movies

with the objective of intending to promote child pornography; and *American Film Distributors, Inc. v. State*, 471 N.E.2d 3 (Ind. App. 1984), which involved the crime of the exhibition of movies containing child pornography where complainant paid one fee to view the movies.

We believe the federal child pornography statute at issue in *U.S. v. Esch*, 832 F.2d at 541, which "proscribes the use of a minor to engage in 'any sexually explicit conduct for the purpose of producing *any visual depiction* of such conduct.' (emphasis added)," is a more compelling comparison to the statute and facts at issue in this case. The Court of Appeals for the 10th Circuit concluded that the words "any visual depiction" contained in the federal child pornography statute, see 18 U.S.C. 2251(a) (2000), required that each photograph be charged as a separate and distinct violation. The language of the federal child pornography statute is similar to that of § 28-1463.03.

In a similar analysis, the Wisconsin Supreme Court in *State v. Multaler*, 252 Wis. 2d 54, 643 N.W.2d 437 (2002), concluded that "any" in the Wisconsin child pornography statute, Wis. Stat. Ann. § 948.12 (West 1996), required a separate charge per photograph. The *Multaler* court reasoned that the term "any" indicated that the legislature intended prosecution for each photograph. In *Multaler*, the Wisconsin Supreme Court rejected the defendant's assertion that the unit of prosecution in that case was each of two computer disks and stated that notwithstanding the fact that the 28 images to which the defendant entered pleas to 28 counts of possession of child pornography were found on two computer disks, a separate charge per image was nevertheless indicated. The *Multaler* court stated: "In essence, because it appears that the images on the disks were photographs of actual children, the disks served as electronic photo albums [and it is] appropriate to bring separate charges for separate photographs in a traditional photo album." 252 Wis. 2d at 84, 643 N.W.2d at 451. In *Multaler*, the court found that every time the defendant downloaded a new image, he recommitted himself to additional criminal conduct. In the present case, every time Mather directed and caused T.P. to assume a new pose and took a differing photograph, he recommitted himself to additional criminal conduct.

We are aware of the Washington Supreme Court's decision in *State v. Root*, 141 Wash. 2d 701, 9 P.3d 214 (2000), cited favorably by the dissent. We note, however, that the statute at issue in *Root* differs from the Nebraska provisions. The statute involved in *Root* stated as follows:

"(1) A person is guilty of sexual exploitation of a minor if the person:

"(a) Compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance;

"(b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance; or

"(c) Being a parent, legal guardian, or person having custody or control of a minor, permits the minor to engage in sexually explicit conduct, knowing that the conduct will be photographed or part of a live performance."

141 Wash. 2d at 706-07, 9 P.3d at 216-17. The Washington Supreme Court concluded that the Washington statute essentially consisted of two elements: (1) posing a minor in sexually explicit conduct and (2) knowing that the conduct will be photographed. Based on the particular language of the statute, the Washington Supreme Court concluded that the unit of prosecution under the Washington statute was "per photo session." *Id.* at 710, 9 P.3d at 218. While such conclusion is supported by the language of the Washington statute, the language of the Nebraska statute differs and does not support a "per session" unit of prosecution.

Finally, the dissent posits that under our interpretation of § 28-1463.03, if a child is the subject of a motion picture, each frame of the film could conceivably be charged as a separate count. We note that the present case involves 18 works of still photography, each of which is clearly encompassed by "photographic representation," see § 28-1463.02(6), and that the issue of a motion picture is not before us. In this regard, we note that unlike Nebraska, other states address the motion picture issue in statutory language. For example, in Wisconsin, § 948.12 provides: "Whoever possesses any undeveloped film, photographic

negative, photograph, motion picture, videotape or other pictorial reproduction or audio recording of a child engaged in sexually explicit conduct under all of the following circumstances is guilty of a Class E felony . . . ." Because it is not the subject of this prosecution, we make no comment on the "motion picture" hypothetical.

In the present case, Mather was charged with making 18 photographs and causing a child to engage in 18 differing visual depictions of sexually explicit conduct, each of which was the type of "visual depiction" or "photographic representation" described in and prohibited by the statutes under discussion. Under the language of § 28-1463.03(1) and (3) and the facts of this case, each photograph represented a separate offense, and Mather was properly charged with 18 separate offenses. Because each photographic work represented a separate offense, Mather was not subjected to multiple punishments for "the same offense" and there was no violation of double jeopardy principles. We reject Mather's first assignment of error.

*Admission of Photographs Into Evidence.*

Mather next argues that the district court erred in admitting exhibits 1 through 18 and 31 into evidence. Exhibits 1 through 18 are prints of the 18 photographs at issue in this case, and exhibit 31 is a packet found in the search of Mather's home and studio containing prints and negatives of the 18 photographs at issue in this case as well as other photographs. At trial, Mather generally objected to the foundation for each of these exhibits.

On appeal, Mather asserts that his objections regarding foundation related to "the chain of custody as well as the issue of venue." Brief for appellant at 12. With respect to the chain of custody, Mather argues on appeal that "there was a complete lack of evidence regarding the chain of custody for said photographs, as well as the Officer's failure to decipher whether exhibits 1 through 18 were original photographs or copies." *Id.* With respect to his argument regarding the venue of the crimes charged, Mather argues on appeal that T.P.'s testimony did not establish the exact location where the photographs shot outside Weeping Water were taken.

The testimony regarding exhibits 1 through 18 and 31 was as follows: Randall Olsen testified that as an investigator for the

Cass County sheriff's office he conducted the search of Mather's residence and studio. During the search, another officer found the packet of prints and negatives, which would become exhibit 31, and gave them to Olsen, who looked at them and gave them to the evidence officer. Olsen testified that the evidence officer tagged the exhibit and checked it into the evidence room at the sheriff's office.

Olsen testified that he later checked the negatives and prints out of the evidence room and took them to a film processing shop to have additional prints made for the county attorney. Olsen handed the negatives to the operator at the film processing shop and had her sign the evidence log. While in Olsen's view, the operator placed the negatives into a processing machine which produced additional prints. The operator returned the negatives to Olsen and gave him the additional prints. Olsen returned the negatives to the packet and returned the packet containing the prints and negatives to the evidence room. Olsen gave the additional prints which became exhibits 1 through 18 to the county attorney's office.

Exhibits 1 through 18 and 31 were offered into evidence during T.P.'s testimony. T.P. was shown exhibits 1 through 18 and testified that each photograph depicted her and that each print fairly and accurately represented her poses in photographs that were taken by Mather in September or October 1999. T.P. was also shown exhibit 31 and identified it as containing photographs corresponding to exhibits 1 through 18 as well as other photographs taken by Mather on the same day. T.P. described the area where the photographs were taken as being in Weeping Water and another location about 5 miles to the west of Weeping Water and inside Cass County.

As to exhibits 1 through 18, it was not asserted by the State that such photographs were found in Mather's studio, but, rather, the import of Olsen's testimony was that such exhibits were the additional prints made at the film processing shop from the negatives found at Mather's studio. T.P. testified that each of the photographs, exhibits 1 through 18, fairly and accurately represented poses directed by Mather and photographs of her taken by Mather. Such testimony was sufficient for the introduction of exhibits 1 through 18 into evidence, which exhibits contained proof of the conduct charged against Mather.

██ With respect to the chain of custody regarding the packet identified as exhibit 31, we have stated that proof that an exhibit remained in the custody of law enforcement officials is sufficient to prove a chain of possession and is sufficient foundation to permit its introduction into evidence. See *State v. Carter*, 255 Neb. 591, 586 N.W.2d 818 (1998). Whether there is sufficient foundation evidence for the admission of physical evidence must necessarily be determined on a case-by-case basis. *Id.* A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion. *State v. Green*, 238 Neb. 492, 471 N.W.2d 413 (1991).

There was testimony by Olsen that exhibit 31 remained in the custody of law enforcement officials, which was sufficient evidence to prove a chain of possession and provided a sufficient foundation to permit its introduction into evidence. The district court in this case did not abuse its discretion in admitting exhibit 31.

On appeal, Mather mentions "the issue of venue." Brief for appellant at 12. Mather's appellate argument appears to be that the State failed to prove that the charged conduct took place in Cass County where the case was tried. In this regard, we note that the right to be tried in the county where the offense is committed is a statutory right. Neb. Rev. Stat. § 29-1301 (Reissue 1995). Mather did not object at trial to a trial in a county other than where the offense was committed. He therefore acquiesced to holding the proceedings in Cass County and waived his rights under § 29-1301. See *State v. Meers*, 257 Neb. 398, 598 N.W.2d 435 (1999). We reject Mather's second assignment of error.

### Excessive Sentences.

Mather finally argues that the district court imposed excessive sentences. He argues that he "was self employed as a photographer for many years, had recently suffered the loss of his son, had no prior criminal history and had a large volume of character reference letters submitted in support of a probationary sentence [rather than incarceration] by members of the Weeping Water community." Brief for appellant at 14.

Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of

judicial discretion. *State v. Heitman*, 262 Neb. 185, 629 N.W.2d 542 (2001). Mather was convicted of 18 counts of violating § 28-1463.03. The 18 counts were each charged as first offenses which, pursuant to Neb. Rev. Stat. § 28-1463.04 (Reissue 1995), are Class III felonies. The sentencing range for a Class III felony is a minimum 1 year's imprisonment and a maximum 20 years' imprisonment, a $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2000). Mather was sentenced to 3 to 5 years' imprisonment on each count to be served concurrently.

Mather was convicted of a serious crime. The statute under which Mather was convicted is aimed at combating child pornography. The U.S. Supreme Court has observed: "The legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child. . . . [T]he materials produced are a permanent record of the children's participation . . . ." *New York v. Ferber*, 458 U.S. 747, 758-59, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982).

The record and presentence report show that at the time of sentencing, Mather was 53 years old and that at the time the photographs of T.P. were taken, she was 17 years old. When T.P. picked up her senior photographs, Mather encouraged T.P. to repeat a session of nude photography, but she refused. The presentence report includes the observation that the victim continues to endure the negative effects of the event giving rise to this prosecution. Mather's sentences were within statutory limits, and we find no abuse of discretion in the district court's sentencing. We therefore reject Mather's third assignment of error.

## CONCLUSION

T.P., aged 17, was depicted sexually in 18 differing photographs taken and generated by Mather. Mather was charged, tried, and convicted by a jury of 18 counts of visual depiction of sexually explicit conduct which has a child as one of its participants in violation of § 28-1463.03. Mather was sentenced to 18 concurrent sentences of 3 to 5 years' imprisonment.

In view of the 18 differing photographs and the statutory language, we conclude that the proper unit of prosecution under

§ 28-1463.03(1) and (3) was each photograph and that the district court therefore did not err in determining that the State properly charged Mather with 18 separate counts rather than 1 count as urged by Mather. We further conclude that the district court did not err in admitting exhibits 1 through 18 and 31 into evidence and did not abuse its discretion in sentencing Mather. We therefore affirm Mather's convictions and sentences.

AFFIRMED.

WRIGHT, J., dissenting.

The State filed an information charging Mather with 18 counts of knowingly making a visual depiction of sexually explicit conduct based on 18 separate photographs. Mather was convicted on all 18 counts and was sentenced to a term of 3 to 5 years' imprisonment on each count, with the sentences to run concurrently. I respectfully disagree with the majority's statutory interpretation of how many criminal acts were committed.

Neb. Rev. Stat. § 28-1463.03 (Reissue 1995) provides in relevant part: "(1) It shall be unlawful for a person to knowingly make . . . create . . . or in any manner generate any visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers." The term "visual depiction" shall mean "live performance or photographic representation." See Neb. Rev. Stat. § 28-1463.02(6) (Reissue 1995).

The question of how many convictions can lawfully be obtained under circumstances such as those in the case at bar is a question of the appropriate unit of prosecution, and that is a question of legislative intent. See *Castaldi v. United States*, 783 F.2d 119 (8th Cir. 1986), *cert. denied* 476 U.S. 1172, 106 S. Ct. 2897, 90 L. Ed. 2d 983. With respect to federal law, when Congress fails to set the unit of prosecution with clarity, doubt as to congressional intent is resolved in favor of lenity for the accused. See *United States v. Kinsley*, 518 F.2d 665 (8th Cir. 1975).

In *Kinsley*, the court confronted the issue of whether a felon's possession of four firearms constituted one or four violations of 18 U.S.C. app. § 1202(a) (1970), which prohibited a convicted felon's possession of " 'any firearm.' " See 518 F.2d at 666. The court noted that in many cases in which courts have found ambiguity in connection with the allowable unit of prosecution, the object of the offense has been prefaced by the word "any." The

court concluded that the phrase "any firearm" in 18 U.S.C. app. § 1202(a) was ambiguous. In contrast, the court noted that because I.R.C. § 5861(d) (1970) is drawn in terms of " 'a firearm,' " the provision arguably suffers from no ambiguity. See *Kinsley*, 518 F.2d at 670 n.9.

In *U.S. v. Coiro*, 922 F.2d 1008 (2d Cir. 1991), the court held that 18 U.S.C. § 1510(a) (1982), which prevents the obstruction, delay, or prevention of the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator, was ambiguous with respect to the allowable unit of prosecution. The court found that use of the word "any" in the phrase "any person" made the phrase ambiguous. It stated that in cases in that and other circuits, the word "any" has typically been found ambiguous in connection with the allowable unit of prosecution, for it contemplates the plural rather than specifying the singular, relying on *United States v. Kinsley, supra.*

Courts have also noted the difference between the use of the terms "a" and "any" in cases involving pornography. See, *U.S. v. Kimbrough*, 69 F.3d 723 (5th Cir. 1995); *State v. Parrella*, 736 So. 2d 94 (Fla. App. 1999); *American Film Distributors, Inc. v. State*, 471 N.E.2d 3 (Ind. App. 1984). These cases conclude that when the statute uses "any" instead of "a," the intent of the legislature is not clear, and the cases must be resolved against turning a single transaction into multiple offenses.

For example, the majority relies in part on *Burk v. State*, 705 So. 2d 1003 (Fla. App. 1998). In *Burk*, the statute criminalized the production of "a" sexual performance of a child. There, the court held that it was permissible to charge a defendant with 25 counts for 25 different photographs. But other Florida cases have held the opposite when the statute used the term "any" instead of the term "a."

In *Parrella*, the fourth district of the Florida Court of Appeals, the same district that decided *Burk*, held that the showing of multiple movies containing child pornography could not be charged as separate counts when the statute criminalized the possession of "any" motion picture. The court specifically stated that when the term "any" is used instead of the term "a," the legislature intended only a single unit of prosecution. See, also,

*Wallace v. State*, 724 So. 2d 1176 (Fla. 1998) (discussing difference between terms in case involving resisting police officer).

The majority relies on *State v. Multaler*, 252 Wis. 2d 54, 643 N.W.2d 437 (2002), as an example in which multiple counts were permissible under a statute that utilizes the term "any." In *Multaler*, there were more than 28 separate image files. Multaler began downloading images over a period of time. The court determined that since there were more than 28 separate files, every time Multaler downloaded a new file, he recommitted himself to additional criminal conduct. The statute in question provided: " 'Whoever possesses any . . . photograph, motion picture, videotape . . . is guilty of a . . . felony.' " *Id.* at 81, 643 N.W.2d at 450. The court found that because Multaler had downloaded, compiled, and stored multiple images over time, multiple punishments were appropriate. Therefore, I find *Multaler* to be factually distinguishable. In addition, to the extent *Multaler* is read to hold that in all cases, separate counts may be imposed per photograph, I disagree with its reasoning.

In the case at bar, § 28-1463.03(1) refers to "any visual depiction of sexually explicit conduct." Mather took 18 photographs of T.P., and the majority has determined that each photograph constituted a separate offense and that Mather was properly charged with 18 counts.

In my opinion, § 28-1463.03 is ambiguous because of the phrase "any visual depiction." In this case, one could logically conclude that two separate events occurred because two photographs were taken when Mather and T.P. were near a lake and Mather then drove to an area 5 miles west of Weeping Water and took 16 more photographs of T.P. at a different location. Following this line of reasoning, two separate counts would be appropriate. See *State v. Root*, 141 Wash. 2d 701, 710, 9 P.3d 214, 218 (2000) (Supreme Court of Washington, en banc, held that correct unit of prosecution was "per photo session" involved).

Another problem with § 28-1463.03 is that equally culpable conduct may be charged differently. For example, a 10-minute live performance in which a child depicts sexually explicit conduct may be charged as one count. If the child is photographed using a standard 35-mm motion picture camera, which would produce the equivalent of 14,400 still frames,

each frame could be charged as a separate count. Unlike criminal statutes in other jurisdictions, which describe the terms "photograph," "motion picture," "photographic negative," or "videotape," § 28-1463.02(6) defines "visual depiction" as "live performance or photographic representation."

Separate criminal conduct may be charged in the same act if the Legislature expressly so provides, but if the Legislature does not expressly provide, or when it fails to set the unit of prosecution with clarity, any doubt as to the Legislature's intent is to be resolved in favor of the accused. I find nothing in § 28-1463.03 which suggests that the Legislature intended to impose multiple punishments depending on the number of photographs taken during a photography session in which a minor engages in sexually explicit conduct.

In my opinion, the statutory provision "in any manner generate any visual depiction of sexually explicit conduct" is ambiguous, and the ambiguity should be construed in favor of a criminal defendant. See § 28-1463.03. While Mather committed a serious act, for which a serious punishment should be imposed, I believe it would have been more appropriate to charge him with 2 counts rather than 18.

CONNOLLY and MCCORMACK, JJ., join in this dissent.