**John WILLIAMS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2003–SC–1024–MR.

Supreme Court of Kentucky.

Nov. 23, 2005.

492

Timothy G. Arnold, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, George G. Seelig, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Williams of four counts of use of a minor in a sexual performance. He was sentenced to ten years on each count to run consecutively for a total of 40 years.

The issues presented in this appeal are as follows: 1) refusal of the trial judge to grant a directed verdict on all charges; 2) violation of double jeopardy rights; 3) erroneous admission of evidence of other pornographic images; 4) failure of the trial judge to require a special verdict on the issue of obscenity; 5) failure to instruct on the definition of "to engage in"; 6) erroneous use of "knowingly" rather than "intentionally" in the instructions; 7) failure to instruct on voyeurism; and, 8) the use of a nonfinal conviction during the sentencing phase.

This case arises from a series of six digital photographs taken by Williams of his eight-year-old stepdaughter on or about January 22, 2001. Of the four photographs upon which the convictions are based, two show the stepdaughter in various stages of undress, one depicts her sitting naked on the side of the bathtub and another reveals her standing naked in the shower. A fifth photograph depicts the stepdaughter wrapped in a towel, and a sixth was determined to be duplicative of another.

The existence of the photographs became known when Williams' wife noticed him looking at internet pornography sites. This caused her to become concerned that he may have saved images on the hard drive of the family computer. She asked a neighbor, a self-taught computer expert, to remove any obscene images from the hard drive. The neighbor stated that he "slaved" the hard drive to his own computer so that he would be able to work on it, and while doing so, he discovered the photographs of the stepdaughter. He also discovered numerous deleted images of child pornography. The neighbor contacted the sheriff and turned over the computer hard drive to him.

Williams was arrested and indicted on six counts of use of a minor in a sexual performance and one count of distribution of obscene matter. At trial, the distribution charge was not presented to the jury and one of the six counts of sexual exploitation was dismissed because it was believed that one of the photographs was a duplicate. The jury acquitted Williams of the count pertaining to the photograph of the child wrapped in a towel, but convicted him on each of the other four photographs. He was sentenced to ten years on each count to be served consecutively for a total of forty years in prison. This appeal followed.

## I. Directed Verdict

■ Williams argues that he was entitled to a directed verdict on the charge of use of a minor in a sexual performance. Specifically, he claims that the statute should be construed to prohibit the use of minors in sexual acts, not private performances of a nonsexual nature; that there is no evidence that he induced the victim "to engage in" a sexual performance; and, there is no evidence that the performance included sexual conduct by a minor.

■ On motion for a directed verdict, the trial judge must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991). If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. *Id.* The standard for appellate review of a denial of a motion for a directed

verdict based on insufficient evidence is if, under the evidence as a whole, it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal. *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky.1983).

The arguments raised by Williams are without merit. The four photographs of the victim show her either in various stages of undress, sitting naked on the side of the bathtub or standing naked in the shower. Three of the photographs show the breast of the victim and the fourth depicts her buttocks. They were found on the defendant's computer along with other pornographic material.

Williams entered the bathroom while the child was beginning to bathe, left the bathroom and then returned to take additional photographs. The stepdaughter testified that Williams had taken the photographs of her and that she had told him to get out of the bathroom and leave her alone. She also stated that at least one of the photographs was taken without her knowledge; that the actions of Williams made her nervous; that she did not want him in the bathroom; and, that she did not want any pictures taken. The four photographs come within the definition of "sexual conduct by a minor" contained in KRS 531.300(4)(d), regardless of whether the stepdaughter was posing or voluntarily engaging in some kind of sexual performance.

Any reliance on *Young v. Commonwealth,* 968 S.W.2d 670 (Ky.1998), is misplaced because in that case the underlying offense was unlawful transaction with a minor. Here, the offense is the "use of a minor" in a sexual performance. It is obvious that when the stepchild expressed her desire for him to leave the bathroom, she was not in a position from strength, size or the dynamics of their relationship to compel him to leave.

The argument that the pictures were not that obscene and that they might fall under the "family nature" exception in the statute is unacceptable. Obviously, these were not family photographs because the mother of the victim had no knowledge of their existence until after the neighbor discovered them. No evidence or explanation was presented to support the claim for a "family nature" exception, and it should not be used as a false pretext for child pornographers and other persons seeking to exploit minors.

The jury saw the photographs and observed the demeanor of the witnesses and the stepdaughter when they described the events. It had no problem in concluding that the statute had been violated. The trial judge properly denied the motion for a directed verdict.

## II. Double Jeopardy

Williams argues that the photographs should have been consolidated into one count of use of a minor in a sexual performance; however, he concedes that the issue was not properly preserved for appellate review. He requests this Court to review the claim under the provisions of RCr 10.26 because it is manifestly unfair that he was convicted of four separate crimes and sentenced accordingly for something that should be considered as only a single crime. We disagree.

KRS 505.020 provides in relevant part as follows:

(1) When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when:

. . .

(c) The offense is designed to prohibit a continuing course of conduct and the

defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.

Whether a particular course of conduct involves one or more distinct offenses under a statute depends on how a legislature has defined the allowable unit of prosecution. *See* KRS 505.020 (1974 Official Commentary) which states that Subsection (1)(c) "places the burden on the legislature to determine the instances in which a continuing course of conduct involves sufficient danger to be treated as multiple offenses." *See also, Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). Consequently, whether the conduct of Williams in creating the multiple different photographs involved one offense or four separate offenses depends on how the statute defines the offense and the unit of prosecution intended by the Legislature as reflected in the plain language of the statute.

KRS 531.300 et seq. pertains to the Sexual Exploitation of Minors. KRS 531.310(1) provides that "[a] person is guilty of the use of a minor in a sexual performance if he employs, consents to, authorizes or induces a minor to engage in a sexual performance." A "sexual performance" is defined as "any performance or part thereof which includes sexual conduct by a minor[.]" KRS 531.300(6). A "[p]erformance" includes "*any* play, motion picture, *photograph* or dance." KRS 531.300(5) (emphasis added).

■ Here, the plain language employed in the definition of "performance" focuses on "any photograph." The singular form of "photograph" read in conjunction with the term "any" clearly indicates that the Legislature intended prosecution for each

differing photograph. Accordingly, a person who generates differing and multiple prohibited photographs or causes a child to engage in the creation of such photographs commits multiple offenses of KRS 531.310, even though each such differing photograph involves the same subject captured in a narrow timeframe.

Our reading of the relevant statutes is in accord with other jurisdictions with similar statutory language. *See, United States v. Esch,* 832 F.2d 531, 541 (10th Cir.1987) (under federal statute prohibiting use of minor for purpose of producing " 'any visual depiction' " of sexually explicit conduct, correct unit of prosecution held to be per photograph; each photograph represented separate and distinct use of child); *Burk v. State,* 705 So.2d 1003 (Fla.App.1998) (legislative intent was to make production of each individual photograph separate crime; direction of poses and taking of each photograph sufficient to support separate violations for each photograph); *State v. Mather,* 264 Neb. 182, 646 N.W.2d 605 (2002); *Vineyard v. State,* 958 S.W.2d 834, 837 (Tex.Crim.App.1998) (use of singular tense in statute meant unit of prosecution for possession was per " 'film image' "); *State v. Morrison,* 31 P.3d 547, 556 (Utah 2001) (each individual " 'visual representation' " of child pornography possessed constitutes basis for separate offense); *State v. Multaler,* 252 Wis.2d 54, 643 N.W.2d 437, 450 (2002) (where statute referred to possession of " 'any ... photograph,' " unit of prosecution was each of 28 images found on two computer disks).

### III. Admissibility of Additional Material

■ Williams argues that the trial judge erred by permitting the Commonwealth to introduce extraneous evidence of other allegedly pornographic images found on the computer. We disagree.

Before trial, the Commonwealth filed two notices of its intent to introduce evidence pursuant to KRE 404(b). The first notice involved evidence that Williams had been convicted of three counts of third-degree rape against a 14–year old girl. This also included evidence that he asked that victim if he could take revealing photographs of her. The second notice involved evidence of up to twenty-one pictures of the defendant's other stepdaughter in which she allegedly posed in sexually suggestive manner while fully clothed.

Defense counsel objected to the introduction of any of this evidence at a hearing on the matter. The trial judge determined that the photographs of the other stepdaughter were not bad acts, were not relevant and thus were inadmissible. The Commonwealth then informed the trial judge that there was lots of other adult and child pornography found on the defendant's computer. Defense counsel objected to the introduction of other pornographic pictures, claiming that intent was not an element of the offense. He also claimed that the pornographic material had no bearing on whether the photographs of the victim were obscene.

The trial judge ruled that the Commonwealth could introduce the evidence from the third-degree rape or up to six other items in the computer, but not both. The Commonwealth stated it would choose the latter.

At trial, the Commonwealth presented the testimony of the police detective who retrieved the evidence from the defendant's computer. He identified the six photographs of the victim as being the same as the ones found on the hard drive of the computer. He referred to the six pictures as a "series" of photographs, meaning a group of photographs taken together, generally of the same subject.

During the testimony of the detective the Commonwealth introduced three exhibits, Commonwealth's exhibit # 11, # 12 and collective exhibit # 13. Exhibit # 11 is not in the record. Exhibit # 12 consists of two pages of 32 thumbnail size photographs, including the six digital photographs of the victim. Also depicted on this exhibit are six dark and grainy photographs of an individual who appears in some to be lying in bed and in others posing in a reclined position. The private areas of this individual are not discernable. Collective exhibit # 13 was apparently enlargements of these six photographs, but the record contains only a single enlarged photograph. The remaining twenty photographs in exhibit # 12 are irrelevant and consist of generic pictures and unidentified subjects, some of which may be close ups of the defendant's face.

When the detective was asked about the six dark and grainy photographs, he stated that they appeared to him to be the victim. Defense counsel objected, but the ruling, if any, on that objection is inaudible on the videotape record. Thereafter, the trial judge allowed the Commonwealth to introduce collective exhibit # 13 over the defendant's objection.

The Commonwealth then asked the detective about the other "series" on the computer. He responded that there were several images in the folder which contained the photographs taken by the defendant. Defense counsel offered another objection, claiming the trial judge ruled them inadmissible. A lengthy discussion ensued in-chambers and there was some general confusion on what the Commonwealth was seeking to introduce. The prosecutor explained that he had decided not to introduce the six pornographic items that the trial judge had previously ruled admissible. Apparently he was not going to show the jury the pornographic materi-

als, but wanted the detective to testify to their existence.

Changing tactics, defense counsel expressed concern that the jury was left with the impression that there was another victim depicted in the other images referenced by the detective. The prosecutor responded that he could clear that up with a couple of questions. When trial resumed, the prosecutor asked the detective whether there was another "series" generated by the defendant. Defense counsel immediately moved for a mistrial and the prosecutor requested a further opportunity to clear it up. The prosecutor then asked the detective if there were any other photographs on the computer that came from a digital camera. The detective responded that the only ones were those contained in the file he looked at, the same file which was depicted on one of the exhibits. When asked if he knew the manufacturer of the other child pornography, the detective responded in the negative. Both counsel then approached the bench and defense counsel indicated that he thought the issue was cleared up, but he would have to take it up during cross-examination to make sure.

On cross-examination, defense counsel clarified that the only photographs on the computer taken with a digital camera were the ones already seen by the jury. He also verified that there was no contention that the other pictures were generated by the defendant.

It is abundantly clear from our extensive review of the record that the jury was only informed about the other pornographic material on the defendant's computer. No visual depictions were presented and there was no detailed description of the items. For that reason, reliance on *Chumbler v. Commonwealth,* 905 S.W.2d 488 (Ky.1995) is misplaced.

Considering the entire sequence of events, it is also clear that defense counsel was objecting to the introduction of pornographic images, not the mentioning of them. This is evident because the mother of the victim testified, without objection, that she saw her husband on the "porn sites" and that led her to ask a neighbor to wipe the hard drive clean. That neighbor then testified, without objection, that when he undertook the task he found child pornography. He later described finding numerous amounts of pornography and child pornography. Defense counsel did object at that time, claiming that "child pornography" was a legal conclusion. The trial judge sustained that objection and no further relief was requested.

Considering the nature of the offense and its characteristics, the introduction of this evidence was admissible to show intent or knowledge under KRE 404(b). The reference was relevant and probative of the issue of whether photographs taken by Williams constituted a sexual performance.

## IV. Special Verdict—Obscenity

■ Williams argues that a special verdict should have been given to the jury to determine whether the photographs were obscene. He concedes that this issue was not raised before the trial judge and was not properly preserved, but contends that this issue should be considered as substantial error pursuant to RCr 10.26 because the result would likely have been different if this alleged error had not occurred. We disagree.

Even if a special verdict is required in these circumstances, the failure to do so here was not palpable error. The jury instructions set out the relevant definitions, including "performance", "sexual conduct by a minor", and "obscene". In-

herent in the verdict of the jury is a finding of obscenity.

### V. "To engage in"

■ Williams complains that the trial judge erred by failing to instruct the jury on the meaning of the phrase "to engage in." He asserts that the jury was not properly instructed on the "whole law" of the case. Williams claims that the term should be defined as it is used in the offense of unlawful transaction with a minor, KRS 530.064(1), and as mentioned in *Young, supra.* The trial judge denied the request indicating that such an issue would be a matter for the jury to determine.

> The language of KRS 530.064(1) states: A person is guilty of unlawful transaction with a minor in the first degree when he knowingly induces, assists, or causes a minor to engage in illegal sexual activity, or in illegal controlled substances activity other than activity involving marijuana, *except those offenses involving minors in KRS Chapter 531 and KRS 529.030.* (Emphasis added.)

This statute specifically distinguishes itself from offenses involving sexual exploitation of minors. Consequently, *Young* has no application here. Moreover, in order to be involved in a transaction with a minor, there has to be some mutuality of action. KRS 531.310, however, is intended to punish the use of minors in a sexual performance regardless of the child's assent to being exploited. There was no abuse of discretion in the decision by the trial judge not to define the phrase.

### VI. Instruction on Mental State

Williams asserts that it was error for the trial judge to instruct the jury that he could commit the offense of use of a minor in a sexual performance knowingly, rather than intentionally. Williams concedes that this issue is not properly preserved for appellate review, but asks this Court to consider the matter as palpable error pursuant to RCr 10.26.

This Court has repeatedly stated that failure to comply with RCr 9.54(2) prohibits further consideration of any alleged error in the jury instructions. The language contained in the instruction in this case complied with a form instruction set out in Cooper, *Kentucky Instructions to Juries* § 4.86 (1999). There is no basis for additional consideration of this unpreserved issue.

### VII. Instruction—Voyeurism

■ Williams asserts that he was entitled to have the jury instructed on the lesser-included offense of voyeurism. We disagree.

In 2002, the Kentucky legislature enacted a new statute, KRS 531.090, for the offense of voyeurism. It had an effective date of July 15, 2002, which was approximately 16 months after the commission of the offenses by Williams on or about January 22, 2001.

Defense counsel, at the conclusion of the defense case, mentioned a request for a lesser-included offense of voyeurism under the new statute. The trial judge noted that the statute was not the law in existence at the time of the offense and that an *ex post facto* problem would be generated because the defendant could potentially be found guilty of something that was not an offense at the time of the violation. The trial judge denied the request.

KRS 446.080(3) provides that "[n]o statute shall be construed to be retroactive unless expressly so declared." There is no retroactivity statement in the new law, KRS 531.090, and it could not be applied in this matter.

Reliance on *Commonwealth v. Phon,* 17 S.W.3d 106 (Ky.2000), is misplaced because that case is factually distinguishable from the one presented here. In *Phon, supra,* there was a change in the penalty range of the existing homicide statute to include the possibility of life without parole. Here, an existing statute was not amended, but rather an entirely new offense was created by the enactment of KRS 531.090. There was no error in denying the requested instruction.

## VIII. Sentencing Error

 In the penalty phase, the prosecution called the circuit clerk to testify as to the defendant's prior record. Over defense objection, the clerk testified that Williams had been convicted of three counts of third-degree rape and that those convictions were on appeal at the time of the trial.

Ultimately, the Court of Appeals affirmed the convictions for third-degree rape. *Williams v. Commonwealth,* 2003–CA–707–MR, 2004 WL 2486680 (Ky.App. 2004). Williams sought discretionary review which this Court granted on August 17, 2005. *Williams v. Commonwealth,* 2004–SC–1006–DG.

In *Melson v. Commonwealth,* 772 S.W.2d 631 (Ky.1989), we stated in pertinent part:

It is the holding of this court that a prior conviction may not be utilized under KRS 532.055 (the truth-in-sentencing statute) or under KRS 532.080 (persistent felony offender act) unless:

(1) The time for appealing the convictions has expired without appeal having been taken, or

(2) Matter of right appeal has been taken pursuant to § 115 of the Constitution of Kentucky and the judgment of conviction has been affirmed.

The court went on to state that this holding does not apply to collateral attacks such as provided in RCr 11.42, nor does it apply to pending motions for discretionary review. If discretionary review has been granted, the conviction shall not be used until the case is disposed of by the reviewing court. The error in admitting nonfinal convictions was considered harmless in *Melson, supra,* not only because the convictions were subsequently affirmed, but each defendant had sufficient other admissible prior felonies to justify the PFO instruction.

In this case, although the Court of Appeals has subsequently affirmed the convictions, this Court has granted the defendant's motion for discretionary review. Furthermore, Williams did not have any other admissible prior convictions. Consequently, we cannot find the error to be harmless.

In reviewing this case, we have found no error in the guilt phase portion of the trial. Williams was not denied his due process rights under the state or federal constitutions.

The singular form of photograph in KRS 531.300(5) read in conjunction with the term "any" indicates that the General Assembly intended prosecution for each differing photograph. Such an interpretation is consistent with the clear intent of the General Assembly to prevent sexual exploitation of children.

The judgment is affirmed in part as to the conviction of Williams for four counts of use of a minor in a sexual performance. However, the 40–year sentence is reversed and this matter is remanded for a new sentencing phase.

All concur.