RENDERED: SEPTEMBER 30, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2020-SC-0366-MR

DYLAN TYLER MINCH                                             APPELLANT

ON APPEAL FROM MADISON CIRCUIT COURT
V.             HONORABLE JAMES D. ISHMAEL, SPECIAL JUDGE
NO. 19-CR-00028

COMMONWEALTH OF KENTUCKY                     APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**<u>REVERSING</u>**

Dylan Tyler Minch appeals as a matter of right from the judgment imposing a seventy-year sentence for his convictions on forty counts of possession or viewing of a matter depicting a sexual performance by a minor, seven counts of the use of a minor under sixteen in a sexual performance, and one count of sexual abuse of a minor under twelve.[1]

He argues on appeal that (1) he was denied a fair trial on the sexual abuse and sexual performance charges because they were tried jointly with the possession charges; (2) pornographic images that were not connected to the indicted charges were used improperly as Kentucky Rule of Evidence (KRE)

---

[1] Ky. Const. § 110(2)(b) ("Appeals from a judgment of the Circuit Court imposing a sentence of . . . imprisonment for twenty years or more shall be taken directly to the Supreme Court.").

404(b) evidence against him and rendered his trial unfair; (3) the trial court erred in denying his motion for a continuance because he needed to review the KRE 404(b) evidence used against him; and (4) the cumulative effect of these errors compels reversal. We find it necessary to reverse Minch's convictions because the trial court erred in allowing the Commonwealth to use a voluminous number of unindicted images as KRE 404(b) evidence. Consequently, we decline to address Minch's arguments that his conviction should be reversed on the bases of cumulative error and the trial court's failure to grant his motion to continue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Attorney General's cybercrimes unit, the unit tasked with monitoring the internet for child pornography, received a flag from the monitoring system reporting the location of previously identified child pornography. Detective Littrell from the AG's cybercrimes unit received the flag on his computer and obtained the IP address of the user who was in possession of the material. Littrell obtained the physical location of that IP address being used at that date and time. Littrell applied for and executed a search warrant at the Minch home where he encountered Minch, his wife, and their infant daughter (J.M.). Minch gave his cell phone and its passcode to Littrell, who then found content he suspected to be child pornography. Some of the images that Littrell discovered were images of J.M. taken by the cell phone's camera.

Detective Bell from the cybercrimes unit conducted a manual examination of the phone. He found there ten similar images of J.M., all taken

2

within minutes of each other, all depicting her naked.  Minch sent a text containing one of these images to his wife in response to hers informing him that she was headed home from work.  This image showed a naked man—whose head was not visible—in the bathtub with a naked J.M.  And in response to his wife's question about whether J.M. had been fed, Minch sent a second image, this time showing his face and J.M. in the foreground taking her bottle.

In total, Bell found on Minch's cell phone what the Commonwealth alleges to have been 925 files of child sexual-exploitation material.  On one of the Minch home computers, Bell found what the Commonwealth alleges to have been 4,622 images and 1,005 videos of child sexual exploitation material.  At the end of his investigation, Bell presented his full report to Littrell who selected some of the images and videos to present to the grand jury.

The grand jury's original indictment of Minch contained thirty-one counts, twenty of which were for possession or viewing a matter depicting a sexual performance by a minor.  A superseding indictment contained fifty-one counts, adding twenty more relating to the child pornography.  During the trial, the Commonwealth moved to dismiss three counts.  Ultimately, the jury convicted Minch of all pending charges and recommended sentences as follows: forty counts of possession or viewing of a matter depicting a sexual performance by a minor, for which the jury recommended consecutive five-year sentences; and seven counts of use of a minor under 16 in a sexual

3

performance, for which the jury recommended consecutive ten-year sentences. The trial court sentenced Minch to a total of 70 years' imprisonment.

On appeal, Minch argues that any discussion of the images not presented to the grand jury and, therefore, not subject to indictment, should not have been allowed by the trial court because they constitute evidence of uncharged crimes in violation of KRE 404(b). Minch also asserts that the trial court should have severed the counts involving J.M. as the alleged victim. Minch additionally claims that the trial court should have granted his motion to continue the trial to allow him time to review all these images. Finally, he urges this Court to find that the cumulative effect of these errors rendered his trial fundamentally unfair.

## II. ANALYSIS

### A. The trial court did not err by denying Minch's motion to sever the charges related to the images of J.M. for a separate trial.

Minch argues that his trial was rendered unfair because the more serious charges of his use of a minor under 16 in a sexual performance—the charges arising from the images he took of himself and J.M naked and in the bathtub—were not severed from the multiple remaining charges of possession or viewing of a matter depicting a sexual performance by a minor. Minch asserts that the jury could not fairly evaluate the evidence against him on the charges related to the bathtub images[2] because of the overwhelming amount of

---

[2] Originally, there were charges related to ten such images with J.M., but the Commonwealth moved to dismiss three charges. So seven were submitted to the jury.

4

evidence presented against him on the possession-of-child-pornography counts. He argues that the trial court erred in not severing the bathtub-image counts for separate trial. We disagree.

Minch was indicted on charges arising from two different sets of images. One set was of images Minch took using his cell phone camera while he and J.M. were naked in the bathtub. The other set of images included those tracked on the internet by investigators as child pornography. While there were seven separate counts submitted to the jury relative to seven bathtub images, those images were all essentially the same shot taken seconds apart. The pictures displayed Minch, with his face not shown, in the bathtub with J.M. Both Minch and J.M are naked, and J.M is lying vertically, face up across her father's genitals. These photos were taken shortly before accompanying text messages that place these pictures in context of a text-message exchange between Minch and his wife. The text messages include Minch's wife informing him she will be home soon. Minch's response to his wife's text was the photo of him and J.M.—the photo for which he was indicted for sexual exploitation. The wife then asked via text if J.M. had been fed, and Minch responded with another image that showed his face along with J.M in the foreground taking a bottle. The text messages were read to the jury as follows:

> J.M's Mother: About to leave work
> Minch: Hurry, you can join us in the tub [Minch attaches picture of J.M. lying on top of him in the bathtub].
> Minch: She has fun
> J.M.'s Mother: haha when was the last time she ate?
> Minch: Idk you tell me. [Minch sends picture of J.M. holding a baby bottle still in the bathtub].
> J.M.'s Mother: lol wtf?

Minch: Hey she's happy AF. Don't question it.
J.M.'s Mother: I'm leaving work.

Before trial, Minch sought to sever count 51, the charge of first-degree sexual abuse, and counts 1-10, the charges of use of a minor in a sexual performance, from counts 11-50, the charges of possession or viewing of a matter depicting a sexual performance by a minor.[3]  The Commonwealth opposed Minch's motion, and the trial court held a hearing.  The defense argued that if the counts were severed, the child-pornography charges would not be relevant to anything at issue in the sexual-exploitation and sexual-abuse charges but would only serve as unduly prejudicial propensity evidence in a combined trial.  The defense also argued that the Commonwealth had given the grand jury the opportunity to indict Minch for crimes associated with the bathtub photos in conjunction with presenting the other images recovered during the investigation and that the detectives' grand jury testimony described the bathtub pictures as otherwise somewhat innocuous.  Lastly, the defense requested the trial court conduct an in-camera review of the bathtub images. The trial court informed counsel it would consider reviewing them after researching the law on severance.

In opposing Minch's severance motion, the Commonwealth argued that the images for which Minch was charged with sexual exploitation of a child involved a naked child with visible genitalia and whether this depicted a sexual performance was a question for the jury.  So, the Commonwealth argued, the

---

[3] At trial, three counts of sexual exploitation were dismissed.

6

other pornographic images were relevant to demonstrate Minch was sexually aroused by children and to show his intent in the creation of the images. Finally, the Commonwealth argued that if the trial court severed the charges, it would have to try the same case twice.

The trial court did not issue a ruling at the hearing. At the hearing, the trial court questioned the Commonwealth and defense counsel about the nature of the images, the similarity of the offenses, and the potential prejudice to Minch. Ultimately, the trial court denied the severance motion by written order but failed to give a factual or legal reason to support its ruling.

At Minch's trial, the jury heard testimony about child-pornography culture, the forty indicted images found on Minch's computer, and the unindicted images. Littrell testified that images like the ones of Minch and J.M were typically used as something to exchange for other child pornography. Minch argues that he was prejudiced because of the charges not being severed.

We will not overturn a trial court's decision not to sever joint charges unless we are satisfied that the trial court abused its sound discretion resulting in prejudice to the defendant.[4] Here, we find that the trial court's decision was properly supported by law.[5] RCr. 6.18 permits offenses to be tried

---

[4] *Cohron v. Commonwealth*, 306 S.W.3d 489, 493 (Ky. 2010).

[5] Minch additionally argues that the trial court's severance motion should be reversed because the order failed to make factual findings. It is true that under Kentucky Rule of Criminal Procedure RCr 8.20(2), when factual issues are involved in ruling on a motion, the court shall state its essential findings on the record. However, our finding that severance was properly denied is based on legal conclusions alone, so we do not need to address whether the trial court's lack of explanation was error.

together if they are of the same or similar character or based upon the same acts or constituting a common scheme or plan. To be entitled to severance, a criminal defendant must show that a joint trial would be unduly prejudicial.[6] The test for the appellate court of whether joinder was improper is if evidence from one of the trials, if held separately, would be admissible at the other.[7] If so, joinder will generally not be considered prejudicial, and for the sake of judicial economy, the charges could be tried together.

In *Whaley v. Commonwealth*,[8] we explained that joinder is proper when, absent undue prejudice, the charge the defendant wishes to be tried separately would be admissible as KRE 404(b) evidence during the trial of the other charges.[9] In *Williams v. Commonwealth*,[10] we explained that the trial court did not err when it allowed the Commonwealth to mention under KRE 404(b) evidence of pornographic images found in the defendant's possession if intent or knowledge is at issue.[11] In *Williams*, the defendant was indicted on six counts of use of a minor in a sexual performance and one count of distribution of obscene matter.[12] At trial, the Commonwealth sought to admit deleted child pornography images that were also found on the defendant's computer.[13] We

---

[6] *Id.*

[7] *Id.*

[8] 567 S.W.3d 576 (Ky. 2019).

[9] *Id.* at 584.

[10] 178 S.W.3d 491 (Ky. 2005).

[11] *Id.* at 496-97.

[12] *Id.* at 493.

[13] *Id.* at 496.

found that evidence to be properly admitted as the characteristics of the case made the other pornographic materials "relevant and probative of the issue of whether photographs taken by Williams constituted a sexual performance."[14]

In the present case, we find that the child pornography charges would have been relevant KRE 404(b) evidence of Minch's intent to sexually exploit J.M., so the charges were properly tried together. The current circumstances are like those in *Williams*. Here, Minch's defense was that the images were simply not sexual exploitation, or in other words, were not pornographic or taken for sexual gratification. As such, we find Minch's defense to have made his purpose in taking the photos highly relevant to his intent to sexually exploit J.M.

The nature of the images of J.M. are not inherently sexual or exploitative, and that makes evidence of the surrounding circumstances highly relevant and probative of Minch's guilt or innocence. Alongside the introduction of the image of J.M. lying across Minch's naked genitalia was testimony by Littrell, a cybercrimes investigator, relaying how this sort of image is typical of those circulated among viewers of child pornography. The investigator also testified that those involved in child pornography customarily offer images in exchange for images and that the traded images usually do not show the adult's face. The jury was told that this image was taken earlier in time than the text conversation with Minch's wife.

---

[14] *Id.* at 497.

But the Commonwealth offered no evidence that Minch sent the image to anyone else or attempted to exchange it for child pornography. Lastly, adding credibility to Minch's defense was the introduction of an uncharged and inherently non-sexual image taken as a conversational image of a naked J.M. in the bathtub drinking from a baby bottle. The sexual nature of the image and Minch's sexual gratification from it, if any, were truly open to question. So the images for which Minch was indicted were relevant to prove his intent to sexually exploit J.M. On balance, we conclude that the trial court did not abuse its discretion when it declined Minch's request for separate trials because, if tried separately, the Commonwealth could have used the 40 indicted images and explanatory testimony to show Minch meant to exploit J.M. sexually.

**B. The trial court erred in allowing the Commonwealth to use the unindicted images as KRE 404(b) evidence, and reversal is warranted.**

Minch argues that the trial court erred when it allowed the Commonwealth to use the other images—the images found on Minch's computer for which the Commonwealth did not seek indictment—as KRE 404(b) evidence against him at trial. The Commonwealth introduced the existence of the unindicted images ostensibly to counter any defense Minch might have that the images on his computer were downloaded by mistake or accident. The defense argued this evidence of unindicted images should be barred because Minch had not claimed he possessed the indicted images because of mistake or accident. But the trial court allowed the Commonwealth

10

to use the unindicted images nevertheless to show the 40 indicted images were not in Minch's possession by accident. We review a preserved evidentiary issue like this for abuse of discretion and will only find error if the trial court's decision was arbitrary, unreasonable, or unsupported by law.[15] If we find the trial court erred, we then review for whether the error was harmless, or requires reversal because it rendered the trial unjust.[16]

The Commonwealth informed the jury in its opening statement that Minch had on his computer 5,000 unindicted images and videos depicting child pornography and that it could not present each one of them to the grand jury. Littrell testified about the unindicted images and relayed that, during Minch's arrest, he found hundreds of images of infants and toddlers like those for which Minch was indicted. The defense objected, arguing that Littrell improperly labeled the images as pornographic because such a decision rested with the jury. But the trial court allowed Littrell to testify they met his investigative standards as pornography. Bell also testified about the unindicted images and labelled them pornographic. He stated that 925 images of child sex-abuse material were found on Minch's phone and that 4,622 pornographic images and 1,005 pornographic videos were also found on Minch's computer during the investigation. The Commonwealth asked Bell to repeat those numbers for the jury.

---

[15] *Whaley,* 567 S.W.3d at 582.

[16] *Id.*

11

We conclude the trial court erred when it allowed the Commonwealth to introduce the number of unindicted images because those images were not relevant to anything at issue with respect to the possession charges and their risk of prejudicial harm substantially outweighed their probative value such that they could not have been introduced to prove Minch's exploitation charges.

In *Southworth v. Commonwealth*, we found error in the admission of KRE 404(b) evidence for an issue not in genuine dispute.[17]  Similarly, Minch never claimed the charged images were on his computer or phone because of mistake or accident.  He essentially admitted responsibility for the possession counts and instead centered his defense on denying that he sexually exploited or abused J.M.  The unindicted images are not relevant to the possession charges because they do not have any tendency to make the existence of a fact of consequence with respect to those charges more probable or less probable than it would be without that evidence.  They simply would only show that Minch possessed a mountain of child pornography, which is a highly inflammatory, technically unproven fact that is not probative of his guilt on the 40 charged counts of possession.  Because the unindicted images are not relevant, they would only be used to paint Minch as a bad actor to the jury, so they were not admissible under 404(b).

---

[17] 435 S.W.3d 32, 49 (Ky. 2014).

Further, we said previously in this opinion that the 40 indicted images were probative to show Minch's intent to sexually exploit or abuse J.M., but the unindicted images do not prove anything that the 40 indicted images do not, so their admission was also improper with respect to the exploitation charges.[18] In *Hall v. Commonwealth*, we discussed a similar evidentiary issue involving admitting gruesome photographs. We said:

> When there is already overwhelming evidence tending to prove a particular fact, any additional evidence introduced to prove the same fact necessarily has lower probative worth, regardless of how much persuasive force it might otherwise have by itself. The additional evidence does not appreciably 'advance the ball' toward proving that fact. KRE 403 explicitly incorporates this concept by noting that a trial court is to consider 'needless presentation of cumulative evidence' in deciding whether to admit evidence.[19]

Therefore, the unindicted images in this matter may have some relevance, but they have minimal probative value. The diminished probative value considered on balance with the highly inflammatory nature of the unindicted images warranted their exclusion.[20]

---

[18] *Hall v. Commonwealth*, 468 S.W.3d. 814, 823 (Ky. 2015) ("There are three basic inquiries that the trial court must undertake when determining admissibility of relevant evidence under Rule 403. First, the trial court must assess the probative worth of the proffered evidence; second, it must assess the risk of harmful consequences (*i.e.*, undue prejudice) of the evidence if admitted; and last, it must evaluate whether the probative value is substantially outweighed by the harmful consequences.").

[19] *Id.* at 824.

[20] *See id.* ("In essence, this is another way of saying general gruesomeness by itself, while prejudicial, is an insufficient ground to keep out relevant evidence; rather, the gruesomeness must be such that it creates substantial undue prejudice or other harmful consequences that outweigh the probativeness of the evidence.").

So, while the 40 indicted images would come in as KRE 404(b) evidence, the opposite is true for the unindicted images. Even in *Williams*, where the defendant's possession of pornographic images was properly admitted to show intent and knowledge, the trial court still saw it necessary to limit the amount of other-acts evidence introduced because of its inherently prejudicial nature. There, the trial court required the Commonwealth to choose between admitting the other pornographic images found and other past bad acts.[21] And, even after making the Commonwealth choose the form of other-acts evidence, it also imposed a limit on the number of images introduced.[22] Likewise here, while the indicted images are probative of Minch's intent to sexually exploit and abuse J.M., the unindicted images do not prove any additional fact. Their existence is simply a collateral, prejudicial fact, and so it was error to admit them at trial.

Additionally, the Commonwealth argues that the unindicted images were inextricably intertwined with the charged offenses. We disagree. In *Metcalf v. Commonwealth*, we explained when the exception to the general rule of inadmissibility of other-acts evidence applies.[23] Relying heavily on *The Kentucky Evidence Handbook's* explanation of the rules of evidence, the Court stated "the key to understanding this exception is the word 'inextricably.' The

---

[21] *Williams,* 178 S.W.3d at 496. ("The trial judge ruled that the Commonwealth could introduce the evidence from the third-degree rape or up to six other items in the computer, but not both. The Commonwealth stated it would choose the latter.").

[22] *Id*. at 496.

[23] 158 S.W.3d 740 (Ky. 2005).

exception relates only to evidence that *must come in* because it is so interwoven with evidence of the crime charged that its *introduction is unavoidable.*"[24]  In *Metcalf,* we also pointed to *Fleming v. Commonwealth,* finding the exception to inadmissibility only applies when "two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other."[25]

In *Metcalf,* we found the trial court reversibly erred when it allowed the Commonwealth to introduce improper KRE 404(b) evidence.[26]  Metcalf had been indicted of sexual abuse and sodomy of a minor, C.I.[27]  But the investigation into Metcalf began when officers received a report of him videotaping another child, S.K., while she undressed.[28]  At trial, the Commonwealth used the information of how the investigation began as evidence to explain the circumstances surrounding the crime.[29]  The trial judge allowed this evidence to be introduced after the Commonwealth argued that the other-acts evidence–the investigation into S.K.–was inextricably intertwined with the circumstances of the charged crime.[30]  We found the information to be

---

[24] Lawson, *The Kentucky Evidence Law Handbook,* § 2.20, at 37 (2d. ed. 1984) (emphasis added).

[25] *Metcalf,* 158 S.W.3d at 743 (citing *Fleming v. Commonwealth,* 284 Ky. 209, 144 S.W.2d 220, 221 (Ky. 1940)).

[26] *Id.* at 746.

[27] *Id.* at 741.

[28] *Id.* at 742.

[29] *Id.* at 743.

[30] *Id.* at 742.

prejudicial collateral information that was unnecessary to be introduced to the jury because the Commonwealth's case did not rise and fall on this fact, but instead the investigating officers' testimony would have carried the same weight had they not mentioned the original reason they were investigating Metcalf.[31] Because this evidence was introduced to the jury and highly prejudicial to Metcalf, we reversed the conviction.[32]

We find the circumstances here to be like *Metcalf*. It would have been simple enough for the Commonwealth to not mention the 5,000 unindicted images because they were not intertwined with his charges of possession or sexual exploitation and abuse. For example, the investigating officers could have testified that Minch's computer was pinged because of the 40 indicted images without mentioning the total number of allegedly pornographic videos and images ultimately found. The number of images left uncharged was not a circumstance necessary for the jury to determine Minch's guilt or innocence of the charged crimes. Rather than providing necessary context, as the Commonwealth argues, the thousands of uncharged pornographic images provided dramatic evidence of criminal propensity. Its introduction more likely impelled the jury to conclude that because Minch had thousands of pornographic images on his computer, he was easily guilty of the 40 charged counts of possession, of sexually abusing J.M., and of using J.M. in a sexual

---

[31] *Id.* at 744 ("It would have been a simple matter for Steger and Albritton to truthfully testify that they came to Appellant's residence to investigate an allegation of child abuse without mentioning the uncharged videotaping incident.").

[32] *Id.* at 746.

16

performance. Because the 5,000 images were not intertwined with the circumstances of the case, it was error to allow the jury to hear about their existence. Accordingly, no justification exists to admit the 5,000 images.

We next assess whether reversal is warranted because of the erroneously admitted evidence. And we conclude that it is. Cases involving child pornography and sexual abuse of children are highly emotional and capable of inflaming the jury. So the trial court's role as a gatekeeper monitoring the admission of unduly prejudicial evidence is of upmost importance.[33] Here, as mentioned previously, there was evidence that Minch sexually abused and exploited J.M. and also evidence that he did not. It was for the jury to decide what that evidence means. But our evidence rules contemplate that the jury must make that decision without being potentially swayed by exposure to prejudicial propensity evidence. As stated by *The Kentucky Evidence Handbook*,

> In practice, . . . this expanded idea of contextual relevance often paves the way to prove acts that are anything but inseparable [from] the charged crime, and this label can easily become a catchall for admitting other acts that are far more prejudicial to the defendant than useful in determining guilt of the charged offense.[34]

Even though the unindicted images were not shown to the jury, we still cannot be sure it chose to convict Minch of abuse and exploitation because it truly thought he was guilty after considering the jury was also exposed to

---

[33] *Id.* at 745 (KRE 404(b)(2) "poses a special threat to the law's overriding objective of protecting defendants against the prejudice that is inherent in evidence of other crimes.").

[34] Lawson, *The Kentucky Evidence Law Handbook,* § 2.25, at 139 (2d. ed. 1984).

irrelevant, prejudicial other-acts for which the jury may have felt the need to impose punishment. Multiple convictions for possession of child pornography, which is a Class-D felony, carry a twenty-year sentence,[35] but when joined with a sexual exploitation conviction, the defendant becomes eligible for a 70-year sentence.[36] Here, the jury recommended a 295-year sentence. The statutory cap limited Minch's sentence to 70 years' imprisonment. The nature of the recommended sentence convinces us we must be sure that the jury did not convict Minch of the exploitation and abuse charges for anything except his guilt of the charged crimes. And we cannot say under the circumstances at trial that it did. So we are constrained to reverse Minch's convictions for possession of child pornography and sexual abuse and sexual exploitation of a minor.[37]

---

[35] KRS 532.110(c) ("The aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed. In no event shall the aggregate of consecutive indeterminate terms exceed seventy (70) years."); KRS 532.080(6)(b) ("If the offense for which he presently stands convicted is a Class C or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than ten (10) years nor more than twenty (20) years.").

[36] KRS 532.110(1)(c).

[37] Another opinion issued today, *Bounds v. Commonwealth*, No. 2020-SC-000492-MR (Ky. Sept. 30, 2021), reaches a different conclusion as to the admissibility under KRE 404(b) of additional images of child pornography found on the defendant's computer. But critical factual distinctions in that case compel a different result: Bounds's defense was based on lack of knowledge—he disclaimed any awareness of the child pornography found on his computer. So, evidence that Bounds's computer contained an additional 1,300 images of child pornography, placed in a folder bearing his name, was probative of a material issue—whether he had any knowledge of the child pornography for which he was indicted. *See United States v. Caldwell*, 181 F.3d 104 (6th Cir. 1999) (holding that orderly location of items of child pornography and erotica was admissible to refute defendant's claim of lack of knowledge). Additionally, in *Bounds*, the trial court severed the defendant's rape, sodomy, and sexual abuse

18

### III. CONCLUSION

We find that Minch's convictions for possession of child pornography, use of a minor in a sexual performance, and sexual abuse of a minor cannot stand because we are unable to say with assurance that his trial was not rendered unfair by the introduction of highly inflammatory and prejudicial evidence. We reverse the judgment and remand the case for further proceedings consistent with this opinion.

All sitting. All concur.

---

charges, indicted under KRS Chapter 510, from the child pornography charges, thereby eliminating the risk to Bounds that the jury might convict him of the sexual abuse charges based on his large collection of child pornography images.

COUNSEL FOR APPELLANT:

Jared Travis Bewley
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Kristin Leigh Conder
Assistant Attorney General